James F. Waters, Inc. (a California corporation) formerly James F. Waters (a California corporation) v. Commissioner.
James F. Waters, Inc. v. Commissioner
Docket No. 3924.
United States Tax Court
1945 Tax Ct. Memo LEXIS 118; 4 T.C.M. (CCH) 791; T.C.M. (RIA) 45257; July 16, 1945
*118 In 1938 petitioner acquired through merger certain policies of insurance on the life of its president. Such policies had previously been transferred by him to the merging corporation for valuable consideration. During 1939 petitioner failed to pay the premiums on such policies and the respective companies automatically extended the insurance for the terms specified in the several policies. During the taxable year petitioner's president died and the proceeds of the policies were paid to the petitioner. Held, that no portion of the "net abnormal income" of petitioner is attributable to years other than the taxable year under section 721 (b), I.R.C.Premier Products Co., 2 T.C. 445, followed. Everett S. Layman, Esq., 220 Bush St., San Francisco, Calif., for the petitioner. B. H. Neblett, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $20,730.57, $3,609.26 and $35,325.83 in the petitioner's income tax, declared value excess profits tax and excess profits tax, respectively, for the year 1941. By his amended answer he seeks to increase such deficiencies in the amounts of $270.14, $123.16 and $871.42 in such respective *119 taxes. The primary issue is whether or not the net proceeds of certain insurance policies on the life of the petitioner's president are includible in its gross income. If they are so includible a collateral issue is whether or not they are considered abnormal income attributable to prior years, in determining the petitioner's excess profits tax liability. Findings of Fact Certain facts were stipulated. Those material to the issues are as follows: The petitioner is a California corporation organized on March 16, 1934, with its principal office in San Francisco. Its original corporate name was James F. Waters. On July 29, 1943, it changed its name to James F. Waters, Inc. It filed its individual income tax, declared value excess profits tax and excess profits tax returns for the year 1941 with the collector of internal revenue for the first district of California. James F. Waters, an individual, was the president and the principal stockholder of petitioner from the date of its organization on March 16, 1934, until his death on May 10, 1941, and was the president and the principal stockholder of the James F. Waters Securities Corp. (a California corporation), hereinafter called Securities, *120 from the date of its organization, July 29, 1932, until it was merged into the petitioner on or about October 31, 1938. James F. Waters procured certain policies of life insurance upon his life from the insurance companies on the dates and bearing the numbers set forth below: Name of Company
No. of Policy
Date of Issue
Metropolitan Life Insurance Co.
1236504
July 28, 1927
National Life Insurance Co
510671
June 16, 1927
Prudential Insurance Co. of America
5140061
July 29, 1925
Prudential Insurance Co. of America
4798920
July 29, 1924
Occidental Life Insurance Co.
870688
July 26, 1931
California-Western States Life Insurance Co.
236195
July 16, 1930
Pacific Mutual Life Insurance Co.
752344
Mar. 22, 1930 On or about April 26, 1935, all of such insurance policies had an aggregate cash surrender value of $8,284.50 after payment of premiums due during 1935. The amount of premiums due on the policies during the calendar year 1935 and after April 26, 1935, was $2,062.18. On or about April 26, 1935, James F. Waters transferred and assigned all of the insurance policies to Securities for the sum of $6,222.32, being the aggregate cash surrender value of the policies after payment of all premiums becoming due in 1935, *121 minus the aggregate amount of the unpaid premiums due on all of the policies during 1935 and after April 26, 1935. On or about December 24, 1934, a Group Policy, G-7834, was issued by the Travelers Insurance Company effective from December 24, 1934, with respect to the employees of James F. Waters, an individual, and/or affiliated interests, James F. Waters (a corporation), and Securities. On or about December 24, 1934, there was issued to James Francis Waters, who is the same as James F. Waters, the individual, a certificate of insurance, numbered 49, pursuant to the Group Insurance Policy effective as of December 24, 1934. On or about March 6, 1933, James F. Waters procured from the Travelers Insurance Company a policy of life insurance in the amount of $10,000 and numbered 1749830. On or about July 27, 1929, James F. Waters procured from the Metropolitan Life Insurance Company a policy of life insurance in the amount of $2,500 and numbered 1299774. The proceeds of this policy are not involved in this litigation. On or about April 26, 1935, James F. Waters made, executed, and delivered to Securities an assignment of certain life insurance policies, being all of the policies hereinbefore *122 described, except that the group policy was only transferred in reference to the interests of James F. Waters. In addition to the assignment, James F. Waters executed separate instruments of transfer of each of the policies (except in the case of the group policy when it was a transfer of Certificate No. 49, and except with respect to the Prudential Insurance Company policies which were covered by riders changing the beneficiary to the petitioner and conferring all policy rights upon it. At the time of the delivery to Securities of the assignment the petitioner made and delivered to James F. Waters its check dated April 26, 1934, for $6,222.32. The voucher attached to the check bore the following notation: Actual cash value of policies
per our letter of 4/26/35
$8,284.50
Less premiums due after this
date in 1935
2,062.18
$6,222.32
The letter of April 26, 1935, set forth the ten insurance policies with their several cash surrender values, having an aggregate cash surrender value of $8,284.50. No such value was assigned to policy No. 1299774 of the Metropolitan Life Insurance Company; Policy No. 1749830 of the Travelers Insurance Company, or policy No. G-7834 of the Travelers Insurance Company *123 (group insurance). The petitioner and Securities at all times since their respective dates of incorporation had an insurable interest in the life of James F. Waters. On or about October 31, 1938, Securities merged with the petitioner and there were then transferred to petitioner, by operation of law, all of the insurance policies heretofore described. Neither the petitioner nor Securities recognized any gain or loss upon the transfer of such insurance policies to petitioner. Prior to December 31, 1940, petitioner retransferred to James F. Waters, the individual, the aforementioned policy No. 1299774 issued by the Metropolitan Life Insurance Company and policy No. 236195 issued by the California-Western States Life Insurance Company for an aggregate sum of $3,570.50. That sum equalled the cost of the policies to the petitioner, including the premiums paid on the policies by the petitioner and Securities. Prior to December 31, 1939, Securities and the petitioner paid as premiums upon policy No. 1299774 issued by the Metropolitan Life Insurance Company the sum of $71.21 and as premiums upon policy No. 236195 issued by the California-Western States Life Insurance Company the sum of $2,852.50. *124 The petitioner and Securities paid $13,850.68 as premiums on the seven insurance policies hereinbefore described and also on the Travelers group policy. To this amount is added the sum of $6,222.32 paid to James F. Waters for the policies and from it is subtracted the sum of $3,570.50 paid to the petitioner for the retransfer of the Metropolitan Life Insurance policy No. 1299774 and the California-Western States Life Insurance Company policy No. 236195. The petitioner paid Lura B. Waters, former wife of James F. Waters, $15,000 to eliminate her claim to certain of such policies. The aggregate of the sums so paid, plus $300 previously reported in gross income, is $34,726.21. In the computation of the deficiency, if any, that sum should be deducted from the proceeds of the insurance policies received by the petitioner instead of the sum of $36,592.21 originally used by the Commissioner in his notice of deficiency. James F. Waters died May 10, 1941, and the petitioner received the following amounts on account of the following insurance policies: No. of Policy
Amount
Pacific Mutual Life Insurance Co.
752344
$10,110.00
Occidental Life Insurance Co.
870688
93,544.08
Metropolitan Life Insurance Co.
1236504
2,039.69 * *125 National Life Insurance Co.
510671
10,000.00
Prudential Insurance Company of America
4798920
5,500.00
Prudential Insurance Company of America
5140061
5,500.00
Travelers Insurance Co.
G-7834
5,000.00
Travelers Insurance Co.
1749830
10,000.00
$141,693.77
Prior to the calendar year 1941 neither petitioner nor Securities had ever received as beneficiary, or as assignee of beneficiary's interest, the proceeds of any life insurance policies. During the entire existence of the petitioner it has engaged exclusively in the business of buying, selling and distributing new and used automobiles at wholesale and retail and matters incidental thereto. The petitioner's excess profits credit for the calendar year 1941 based on income was and is the sum of $176,527.46. The petitioner is entitled to a specific exemption of $5,000 for excess profits tax purposes. The petitioner is entitled to an unused excess profits tax carry-over from the calendar year 1940 to the calendar year 1941 in the amount of $31,547.04. The petitioner's value of capital stock as declared in its capital stock return for the year ended June 30, 1941, was and is the sum of $4,000,000. The petitioner is entitled to a dividends received credit in the amount of $41,711.17. The petitioner failed to pay the following premiums due as indicated: Policy No.
Company
Due Date
510671
National Life Insurance Co.
June 16, 1939
5140061
Prudential Insurance Co. of America
July 29, 1939
4798920
Prudential Insurance Co. of America
July 29, 1939
1236504
Metropolitan Life Insurance Co.
July 28, 1939
870688
Occidental Life Insurance Co.
July 26, 1939
752344
Pacific Mutual Life Insurance Co.
Mar. 22, 1939
1749830
Travelers Insurance Co.
Apr. 3, 1939
*126 Upon the petitioner's failure to pay the premium, the cash value of the National Life Insurance Company policy No. 510671 was applied by it to the purchase of continued term insurance in the sum of $10,000, expiring December 17, 1953. By reason of the petitioner's failure to pay the premium due on the Prudential Insurance Company policy Nos. 5140061 and 4798920 and the failure to surrender the policies for their cash value or paid-up life insurance, the company put in force, in lieu of such policies, non-participating term policies for $5,000 each and for the terms of 12 years and 124 days, and 13 years, 48 days, respectively. Upon the petitioner's failure to pay the premiums thereon, the following actions were taken: (1) An endorsement on the Metropolitan Life Insurance Company policy No. 1236504 was made for paid-up insurance for $2,014 for a term of 14 years, 150 days. (2) Policy No. 870688 of the Occidental Life Insurance Company was continued in force under its automatic premium loan provision until the death of James F. Waters. (3) Insurance for the face amount of policy No. 752344 of the Pacific Mutual Life Insurance Company was continued in force for a term of 10 years, 236 *127 days. (4) Policy No. 1749830 of the Travelers Insurance Company was automatically continued as term insurance under the terms of the policy. The record discloses the following additional facts: The petitioner owned the controlling interest in a Michigan corporation engaged in the assembly of taxicabs and in a New York corporation, the distributor thereof. The New York corporation also had a retail franchise for the sale of DeSoto and Plymouth automobiles in Long Island City. James F. Waters was the president and directing head of both corporations, as well as of the petitioner. After the death of James F. Waters on May 10, 1941, a controversy arose between the petitioner and Ronnie K. Waters, widow of James F. Waters. Negotiations for its settlement were in progress on December 7, 1941. The Pearl Harbor disaster made it apparent that automobile production would be restricted. Consequently, the proposed settlement was not made and Mrs. Waters commenced litigation against the petitioner in the Superior Court for the City and County of San Francisco. The litigation continued until March 1942. In January 1942 the manufacture of new automobiles was frozen by the Government. The manufacturer *128 of the cars sold by the petitioner offered about 1,000 of them to the petitioner but the latter was prevented from obtaining them because of Mrs. Waters' objection. In March 1942 the petitioner and Ronnie K. Waters executed a settlement agreement under which the petitioner paid the following amounts: 1. To Mrs. Ronnie K. Waters, $188,973 for 5,039.28 shares of petitioner's stock. 2. To Mrs. Ronnie K. Waters, $196,027 in cash and installment payments. 3. To Walter McGovern, attorney for Mrs. Waters, $22,500. 4. To Mrs. Lura B. Waters, a former wife of James F. Waters, $35,000. The petitioner also transferred to Ronnie K. Waters the title to the Woodside property, valued at $67,057.95. The petitioner also paid over $100,000 in order that the estate of James F. Waters might be closed. In his notice of deficiency, the respondent added to the petitioner's income the sum of $105,101.56 with the following explanation: As beneficiary of certain insurance policies on the life of James F. Waters you received an amount of $141,693.77, representing the proceeds of such policies, upon his death. It is held that the amount of $105,101.56 is includible in gross income for the year 1941, under the *129 provisions of section 22 (b) (2) (A) of the Internal Revenue Code, determined as follows: Proceeds of policies
$141,693.77
Less: Purchase price of policies paid to James F. Waters by James
F. Waters Securities Co., your transferor
$ 6,222.32
Premiums paid by you and James F. Waters Securities Co.
18,640.39
$24,862.71
Less: Premiums applicable to two policies disposed of prior
to taxable year
3,570.50
$21,292.21
Balance
Plus: Amount paid Mrs. Laura Waters to settle her claim to
proceeds
15,000.00
Miscellaneous credit previously reported in gross income
300.00
36,592.21
Net Proceeds held taxable
$105,101.56
Opinion VAN FOSSAN, Judge: Petitioner argued at some length that the insurance proceeds are not includible in petitioner's gross income. We are wholly unimpressed by this contention. Clearly the proceeds of insurance on Waters' life are income under the specific provisions of section 22 (b) (2) (A)[1] *130 , modifying section 22 (b) (1). Such proceeds fit exactly under the statute. See Premier Products Co., 2 T.C. 445; E. T. Slider, 5 T.C. No. 29 (June 18, 1945). Petitioner next argues that such insurance proceeds constitute "abnormal income" under section 721, Internal Revenue Code, as amended. This the respondent inferentially concedes (see also the above cited cases). The respondent held, however, that "life insurance proceeds do not constitute abnormal income attributable to prior years * * *." Here, petitioner argues, the respondent erred and that the proceeds were attributable to prior years. This phase of the matter, under the statute, is governed by the Commissioner's regulations. [2] These regulations, or their *131 counterparts, were fully analyzed and approved by the Court in Premier Products Co., supra. Petitioner is bound by our ruling in that case. The income was not attributable to prior years. Premier Products Co., supra; E. T. Slider, supra. Petitioner concedes that our holding in Premier Products Co., supra, is contrary to its position and urges that we should reverse that decision. It advances no argument that persuades us that we erred in our reasoning in the cited case. We adhere to that decision. Decision will be entered under Rule 50. Footnotes
*. Includes $25.69 interest.
1. SEC. 22. GROSS INCOME. * * * * *
(b) Exclusions From Gross Income. - * * * (2) Annuities, etc. - (A) In General - * * * In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph. The preceding sentence shall not apply in the case of such a transfer if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor.
2. Sec. 35.721-3, Regulations 112.↩